NOT FOR PUBLICATION                                    [Dkt. No. 23]

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE**

| | |
|---|---|
| MIRIAM HASKINS, *et al.*,<br><br>                  Plaintiffs,<br><br>     v.<br><br>FIRST AMERICAN TITLE INSURANCE CO.,<br><br>                  Defendant. | Civil No. 10-5044 (RMB/JS)<br><br>**OPINION** |

Appearances:

    Daniel Posternock
    McDowell Riga Posternock, PC
    400 N. Church Street
    Moorestown, NJ 08057
        Attorneys for Plaintiffs

    Edward J. Reich
    SNR Denton US LLP
    1221 Avenue of the Americas
    New York, NY 10020
        Attorneys for Defendant

**BUMB**, United States District Judge:

I.  Introduction

    Plaintiffs, a class of New Jersey homeowners who refinanced their home mortgages, allege in their Amended Class Action Complaint (the "Amended Complaint") that Defendant First American Title Insurance Company ("Defendant") systematically cheated New Jersey homeowners by misrepresenting the amount of money "due and owing for title insurance."  Plaintiffs claim that Defendant was

bound by statutory title insurance rates, but overstated those

fees on HUD-1 settlement forms at closing, deceiving consumers

who "ha[d] no idea how much they should be paying for title

insurance" and instead relied on title insurers, like Defendant,

to fill in the appropriate rates.

Defendant moved to dismiss the Amended Complaint and, after

oral argument, this Court dismissed four of Plaintiffs' six

claims, allowing Plaintiffs' unjust enrichment claim to go

forward and reserving decision on Plaintiffs' claim under the New

Jersey Consumer Fraud Act (the "NJCFA") pending further briefing

by the parties.  That briefing is now complete.

For the reasons that follow, Defendant's motion to dismiss

Plaintiffs' NJCFA claim is DENIED.

II.  Analysis

Defendant argues that Plaintiff's NJCFA claim should be

dismissed for three reasons:

> (1)  title insurance is not a consumer product;
>
> (2)  the learned professional or semi-professional exemption
>      bars Plaintiffs' NJCFA claim; and
>
> (3)  Plaintiffs have failed to plead that their alleged loss
>      resulted from unlawful conduct by Defendant.

This Court address each argument in turn.

Defendant initially argues that title insurance is not a

consumer product because, first, it is not marketed to consumers

and, second, the insurance is for the benefit of the lender, not

2

plaintiffs. These arguments are not persuasive.  Applying New

Jersey law as established by the State's highest court, as this

Court is obligated (In Schering Plough Corp. Intron/Temodar

Consumer Class Action, No. 2:06-cv-5774, 2009 WL 2043604, at *31

n. 24 (D.N.J. July 10, 2009), the title insurance at issue

qualifies as a consumer product, within the ambit of the NJCFA.

The Amended Complaint is replete with allegations that Defendant

offered, through its agents, title insurance to consumers.

Moreover, the New Jersey Supreme Court's decision in Lemelledo v.

Beneficial Mgmt. Corp. of Am., forecloses Defendant's argument

that it is material that the title insurance was for the benefit

of lenders.

In Lemelledo, the New Jersey Supreme Court held that the

NJCFA covered the sale of credit insurance, for the lenders'

benefit, made in conjunction with a student loan. Lemelledo, 150

N.J. 255, 266 (N.J. 1997).  It reasoned that: "[b]ecause the

broad language of the CFA appears to include both lending and

insurance-sales practices, we conclude that its terms also

include the sale of insurance in conjunction with lending, that

is, loan packing" -  even where the insurance at issue was one

"that the borrower does not want" and was for the benefit of the

lender.  Id. at 260, 266.  That same reasoning controls here,

where title insurance, for the lenders' benefit, is similarly

packaged with the provision of a loan.[1]

    Defendant relies broadly upon <u>Centrum Fin'l Servs., Inc. v.</u>

<u>Chicago Title Ins. Co.</u>, which it argues addressed this precise

issue and came to the opposite conclusion.  That case, however,

_____

[1]    <u>Lemelledo</u> contains a discussion of whether the plaintiff
there believed, despite being informed otherwise, that she was
obligated to purchase credit insurance.  <u>Lemelledo</u>, 150 N.J. at
261.  The court noted that plaintiff there alleged that several
factors led her to this belief, including that the insurance and
loan contract were presented as a single transaction, that the
insurance was not discussed separately from the loan itself, and
that no one addressed her specific need, or lack thereof, for the
insurance.  <u>Id.</u>  This discussion, combined with the court's
subsequent admonition that its "sole inquiry is . . .  whether
the CFA applies to defendant's actions as they are alleged by
plaintiff" (<u>Id.</u> at 265) could support a less robust
interpretation of <u>Lemelledo</u> than adopted by this Court: that the
NJ Supreme Court has thus far only recognized NJCFA loan packing
claims when there is an allegation that the plaintiff believed
that the insurance product was required.  There is no such
allegation here, only an allegation that homeowners are "almost
always" (Am. Compl. ¶ 30) required to purchase title insurance as
part of a refinancing.  The New Jersey Supreme Court's broader
language later in the opinion, however, militates in favor of the
interpretation this Court has adopted.  <u>Lemelledo</u>, 150 N.J. at
265 ("Because the broad language of the CFA appears to include
both lending and insurance-sales practices, we conclude that its
terms also include the sale of insurance in conjunction with
lending, that is, loan packing.").  Even if <u>Lemelledo</u> itself
supported only the more limited holding described above, this
Court's task would then be to predict whether the New Jersey
Supreme Court would refuse to recognize an NJCFA claim based on
loan packing, absent an allegation that the plaintiff believed he
was required to purchase the insurance product.  This Court can
think of no reason as to why the New Jersey Supreme Court would
so limit the NJCFA's ambit.  The NJCFA hinges on whether products
or services are marketed to consumers, not whether they are
required to buy them.  <u>Id.</u> at 263 ("The CFA is intended to
protect consumers by eliminating sharp practices and dealings in
the marketing of merchandise and real estate.")(quotation
omitted).

is clearly distinguishable on its facts.  It was brought against

a title insurance company by the lender beneficiary of a title

insurance policy, and not the actual purchaser of the policy.

Centrum, No. 09-3300, 2010 WL 936201, at *2 (D.N.J. Mar. 12,

2010).  It also dealt with "a complex product [(a $15 million

title insurance policy)] that does not reflect services generally

sold to the public".  Id. at *4.  Plaintiffs allege here, in

contrast, that they are the actual policy purchasers and the

product is a simple title insurance policy governed by

statutorily set rates.  To the extent that Centrum contains more

sweeping language, indicating that title insurance, as a general

matter, is not marketed to the consuming public but to experts

who guide homeowners in their decision-making, Id. ("Rather,

while title insurance may be purchased as part of an ordinary

consumer's home purchase, the insurance purchase is done by an

expert, typically a real estate attorney."), the Court cannot

adopt that proposition at this juncture.  The Amended Complaint

alleges that homeowners lack expert guidance and are instead

routinely victimized by the allegedly deceptive practices of

Defendant. (Am. Compl. ¶ 42, "Homeowners have no idea how much

they should be paying for title insurance.  They simply sign the

[form] at the closing, naturally and reasonably relying on the

title insurer, through its agent . . . .").  This Court must

credit those allegations for purposes of the motion to dismiss.

<u>Pocono Mountain Charter School v. Pocono Mountain School Dist.</u>,
No. 10-4478, 2011 WL 3737443, at *2 (3d Cir. Aug. 25, 2011).

Second, contrary to Defendant's argument, the learned
professional/semi-professional exemption does not apply.  That
exemption excludes insurance brokers, acting within the scope of
their professional license, from liability, not insurance
companies selling insurance, like Defendant.  <u>Call v. Czaplicki</u>,
No. 09-6561, 2010 WL 3724275, at *9 (D.N.J. Sept. 16, 2010)("The
'learned professionals' exemption applies only to insurance
brokers and not insurance companies."); <u>Compare</u>  <u>Chassen v.</u>
<u>Fidelity Nat. Fin'l, Inc.</u>, No. 09-291, 2009 WL 4508581, at *2, 8-
9 *D.N.J. Nov. 16, 2009)(finding that title insurance agents were
immune under the learned professionals exception for alleged
overcharges related to closing service fees for recording deeds
and mortgages) <u>with</u> <u>Macedo v. Dello Russo</u>, 178 N.J. 340, 346
(N.J. 2004)("That is not to suggest that Dr. Dello Russo would be
insulated from the restraints of the CFA if he acted outside his
professional capacity. Like the architect in <u>Blatterfein</u>, if Dr.
Dello Russo were to engage in the merchandising of a golf course,
a vacation time-share or a medical office building, he would be
subject, as all merchandisers are, to the CFA.").

Finally, the Court rejects Defendant's third argument
because Plaintiffs have sufficiently alleged that their alleged
loss resulted from unlawful conduct by First American.  "In order

6

to maintain a claim under the CFA, a plaintiff must show a causal

relationship between the unlawful practice and the ascertainable

loss[.]"  Franulovic v. Coca Cola Co., No.07-539, 2007 WL

3166953, at *9 (D.N.J. Oct. 25, 2007)(quotation and citation

omitted).  This requirement may be satisfied by an allegation

that the plaintiff purchased the product at issue because of a

false representation.  Id.  Plaintiffs here have satisfied this

requirement by alleging that Defendant misrepresented the cost of

title insurance and that they were induced to purchase the title

insurance based on the mistaken belief that the listed rates

matched the applicable regulated rates (Am. Compl. ¶ 105).

Charles v. Lawyers Title Ins. Corp., No. 06-2361, 2007 WL

1959253, at *8-9 (D.N.J. July 3, 2007)(finding that an insurer's

misquoting of title insurance rates on a HUD-1 form constituted

an affirmative misrepresentation); Doherty v. The Hertz Corp.,

No. 10-cv-00359, 2010 WL 4883487, at *7 (D.N.J. Nov. 24,

2010)("Finally, Doherty has asserted facts that show a causal

connection between the unlawful conduct and the ascertainable

loss when she averred that she was charged for non-disclosed and

misrepresented fees and charges through the pretext of her rental

agreement with Hertz.").

III. <u>Conclusion</u>

For all these reasons, Defendant's motion to dismiss

Plaintiff's NJCFA claim is DENIED.


<u>s/Renée Marie Bumb</u>
RENÉE MARIE BUMB
United States District Judge

Dated:<u> October 25, 2011</u>