IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| MIRIAM HASKINS; *et al.*,<br>Plaintiffs,<br><br>v.<br><br>FIRST AMERICAN<br>TITLE INSURANCE CO.,<br><br>Defendant. | Case No. 1:10-cv-05044 (RMB) (JS) |

## **DECLARATION OF DAVID WEINER**

I, David Weiner, declare as follows:

1. I am the title officer of Equity Plus Title Agency, LLC, a title agency located in Linwood, New Jersey. I have been the title officer for Equity Plus since August 2004. As a result, I have nearly 10 years of experience working in the title insurance business. As title officer, my responsibilities include receiving orders for title insurance, responding to those orders, issuing title insurance policies, and conducting closings.

2. Equity Plus does business primarily in Atlantic and Cape May counties in New Jersey. Over the years Equity Plus has served as an agent for First American Title Insurance Company and Old Republic National Title Insurance Company. Equity Plus has been an authorized agent of First American since the company was started in 2003.

3. As title officer of Equity Plus, and due to my 10 years of experience in the local title insurance business, I am familiar with title insurance practices in the South Jersey with respect to receiving orders for title insurance, responding to those orders, and issuing title insurance policies. I also have personal knowledge regarding the application of First American's

title insurance rates, including the refinance rate, in New Jersey, and the records Equity Plus maintains regarding policies it issues that are underwritten by First American in New Jersey.

4. In most refinance transactions in which Equity Plus issues a policy of title insurance, a lender or bank places the order for title insurance by facsimile, phone, email, or regular mail. In these transactions, Equity Plus rarely receives an order for title insurance directly from a buyer, seller, or borrower. In these transactions, Equity Plus typically has no interaction with the buyer, seller, or borrower until the date of closing. Further, if the transaction is a "title only" transaction, where Equity Plus is issuing title insurance but not serving as the settlement agent, Equity Plus generally never has contact with the buyer, seller, or borrower.

5. In my experience, most lenders and mortgage brokers in South Jersey are aware of the refinance rate and will inquire about its availability in a refinance transaction. Most lenders and mortgage brokers also will inquire about the title insurance rate charged in a refinance transaction if they believe that the charged rate exceeds the refinance rate. Individual borrowers often routinely ask members of my staff who are handling their closing if the title insurance premium quoted is the lowest we can offer.

6. Under the current rate manual of the New Jersey Land Title Insurance Rating Bureau, which applies to title insurance policies Equity Plus issues on behalf of First American in New Jersey, a discounted refinance rate is available for lender's policies of title insurance issued in residential refinance transactions if certain criteria are met. The refinance rate applies when a refinance, recast or substitution loan is made to the same borrower on the same property. The discounted rate applies only to so much of the new policy as represents the face amount of the mortgage being refinanced. The refinance rate does not apply when the mortgage being refinanced is a construction loan.

7. In addition, the refinance rate will not apply when a pre-existing mortgage loan is not being paid off out of the proceeds of the new mortgage loan. For example, if the borrower paid cash for the property when he or she acquired it and there is no pre-existing mortgage to be paid off, the transaction is not a refinance and the refinance rate does not apply.

8. When Equity Title issues a First American policy, Equity Title uses software it has purchased (Title Express) to calculate the appropriate rate to charge an applicant for title insurance in accordance with the provisions of the New Jersey Land Title Insurance Rating Bureau Manual.

9. In New Jersey refinance transactions in which Equity Plus serves as the settlement agent and prepares the HUD-1, the title insurance premium amount reflected on the HUD-1 includes fees for endorsements, search fees, and title examination fees, which are not subject to the refinance rate.

10. Equity Plus has a standard business practice of explaining to the person or entity ordering the title insurance policy at the time that a title insurance policy is ordered, that a lower rate may be charged if the requirements of the refinance rate are satisfied. This explanation is provided orally by Equity Plus employees, and each employee explains the availability of the lower rate in his or her own unique manner.

11. When Equity Plus serves as the settlement agent in a New Jersey refinance transaction, Equity Plus's employees inform the borrowers that they may take all the time they need before signing the closing documents. Equity Plus's employees also make themselves available to answer questions about the closing documents, including the HUD-1 Settlement Statement. Borrowers frequently ask questions about the fees listed on the HUD-1, including the title insurance premium. Equity Plus's employees also explain to the borrowers at closing that

they should retain a copy of the title insurance policy for reference in a future refinance or sale transaction.

12. Prior to closing, employees of Equity Plus have a standard practice of double-checking the premium listed on the HUD-1 to ensure that the rate is correct.

13. A regional audit department from First American audits title insurance premiums charged by Equity Plus approximately once every year. Random title insurance files are sampled to ensure compliance with the filed rates.

14. If an audit or inquiry by a borrower, lender, broker, or other person reveals that an overcharge occurred, Equity Plus would issue a refund.

15. In "no cost" refinance transactions, lenders or mortgage brokers pay for closing costs, including a title insurance policy, and borrowers do not pay for those costs. Lenders, including Quicken Loans and Wells Fargo, have offered "no cost" refinance transactions in New Jersey during my tenure as title officer. Equity Plus has issued lender's policies of title insurance in several no-cost refinance transactions, particularly in the refinance "boom" years of 2005-2007. A manual, file-by-file review of the documents in the relevant file(s) for the subject transaction would be necessary to determine whether some third party, rather than the borrower, paid all or part of the premium for title insurance.

16. I understand that the plaintiffs in the above-captioned case seek certification of a class of all persons who, between September 29, 2004 and the present, "(1) refinanced a home mortgage on the same property already covered by a mortgage; (2) paid a lenders' title insurance premium to First American Title Insurance Company, directly or indirectly; and" (3) paid a premium that exceeded the "Minimum Possible Premium" by certain threshold amounts specified by the plaintiffs.

17. As described in detail below, to identify residential borrowers who met the criteria for the refinance rate but did not receive it on First American loan policies issued by Equity Plus in New Jersey during the time period referenced above, thousands of Equity Plus's individual transaction files would have to be examined one by one.

18. Since at least August 2004, Equity Plus has used the Title Express system to track information regarding title insurance policies it issues in New Jersey. I could query the Title Express system to generate a report listing all orders that Equity Plus closed during this time period and providing certain limited information about those orders, including the file number, borrower name, lender, loan amount, status, and whether the transaction was a sale or a refinance. Such a report would not distinguish between residential and commercial transactions; manual review of each transaction would be required to make that determination. Such a report also would not contain the premium amount, the property address, or the face amount of a loan being refinanced.

19. For those First American loan policies that Equity Plus could identify by querying its relevant data systems, to determine whether the borrower (as opposed to some third party) paid the premium, the face amount of the prior mortgage, the type of the prior mortgage, and whether it involved the same borrowers and same property, it would be necessary to examine, at a minimum, Equity Plus's individual title and/or escrow file for each transaction.

20. Equity Plus maintains a title file for each policy that it issues. Those files typically include, among other things, the title insurance policy (or policies), title commitment, and search notes. If Equity Plus also served as the settlement agent in the transaction, it maintains a separate escrow file that typically includes a copy of the HUD-1 and other documents. Equity Plus maintains its files in hard copy format, and a reviewer would have to

conduct a page-by-page review of each file to obtain needed data.  Equity Plus keeps files in its offices for up to one year, and stores older files in storage.

21. Equity Plus has issued policies underwritten by two different title companies between September 29, 2004, and the present, and has approximately 6,000 individual title and escrow files.  To review these files and data to identify all the First American loan policies Equity Plus issued in residential refinance transactions in New Jersey between September 29, 2004 and the present and to further determine whether the loans being refinanced in those transactions met the requirements of the refinance rate would be a time-consuming, labor-intensive process.

22. First American typically is not involved in the day-to-day operations of Equity Plus, including receiving and processing orders for title insurance, charging the applicable rate for title insurance, performing title searches, and collecting premiums.  In the ordinary course of business, Equity Plus does not send copies of its title or escrow files to First American.  Rather, Equity Plus sends First American remittance reports indicating the premium collected, policy number, and liability amount for each policy.

I declare under penalty of perjury, under 28 U.S.C. § 1746, that the foregoing is true and correct.

Executed on: May 16, 2013

_____
David Weiner