[Doc. No. 155]

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| MIRIAM HASKINS, et al.,<br><br>               Plaintiffs,<br><br>    v.<br><br>FIRST AMERICAN TITLE<br>INSURANCE CO.,<br><br>               Defendant. | Civil No. 10-5044 (RMB/JS) |

**MEMORANDUM OPINION AND ORDER**

    This matter is before the Court on defendant's "Motion to Strike Plaintiffs' 'Supplemental' Expert Report" [Doc. No. 155]. The Court received plaintiffs' response [Doc. No. 163] and defendant's reply [Doc. No. 166], and recently held oral argument. The issue to be addressed is whether plaintiffs' June 21, 2013 supplemental expert report should be stricken because, according to defendant, it asserts "surprising new opinions" and it does not properly rebut defendant's expert report. In the alternative, defendant asks for leave to conduct additional expert discovery if the expert report is not stricken. For the reasons to be discussed defendant's motion is DENIED.[1]

---

[1]Although not stated in its motion, defendant took the position at oral argument that it was seeking to exclude the "vast

Background

Plaintiffs filed their class action complaint on September 29, 2010. The gravamen of the complaint is that defendant First American Title Insurance Company overcharged plaintiffs and the proposed class for their title insurance when they refinanced their properties.[2] The present motion concerns the expert reports the parties served in support of and in opposition to plaintiffs' request for class certification. Pursuant to the schedule set forth in the Court's February 1, 2013 Order [Doc. No. 125], plaintiffs' filed their Motion for Class Certification on March 1, 2013 [Doc. No. 127]. The motion included the May 1, 2013 expert report of Michael D. Paktar. See Doc. No. 128-2. The data Paktar relied upon came from defendant's "FAST," "WINGS," and "STAR" databases. Defendant produced the expert report of Bruce A. Strombom, Ph.D. on May 1, 2013 [Doc. No. 140-12, Exhibit A] and responded to plaintiffs' motion on May 31, 2013 [Doc. No. 140].[3] On March 7, 2013, the Honorable Renée Marie Bumb entered the parties' Consent Order providing that plaintiffs could serve a "rebuttal" expert

---

majority" of the June 21, 2013 report rather than the entire report. This Opinion and Order focuses on the "vast majority" of the report defendant complains about.

[2] Plaintiffs seek to certify a class of New Jersey homeowners who refinanced their mortgages between September 29, 2004 and the date of final judgment in the case.

[3] The May 1, 2013 report was replaced by a May 5, 2013 corrected version.

report by June 21, 2013. [Doc. No. 132]. Plaintiffs timely served the "Supplemental Expert Report" of Mr. Paktar which is the subject of defendant's motion. See Doc. No. 153-12.

Defendant's motion focuses on the following opinions in the June 21, 2013 report:

> My rebuttal of certain of Strombom's assertions and, by extension, his criticisms of my findings, conclusions and opinions follows:
>
> 1. From an accounting and/or financial analysis point of view, the electronic data stored in First American's FAST, WINGS and STARS databases are and/or should be adequate to determine whether there was an overcharge in a refinance transaction in New Jersey during the proposed class.
>
> 2. From an accounting and/or financial analysis point of view, my calculations of overcharges for the transactions in the Wyner FAST Sample are reliable, including because I used only transactions identified by First American as refinance transactions and only title insurance premiums identified by First American as title insurance premiums received on those transactions.

June 21, 2013 Rebuttal Report ("RR") at 10. The sum and substance of defendant's motion is that these are not proper rebuttal opinions.[4] Defendant argues that Paktar does not "rebut" its

---

[4] Although the focus of defendant's argument is that Pakter's June 21, 2013 report is not a proper rebuttal, it also argues the report is not a proper supplement. Brief at 1. Since it is clear from reading the report that it was intended to be a rebuttal rather than a supplement, and plaintiffs' counsel acknowledged same at oral argument, the Court will not address whether the report is a proper supplement pursuant to Fed. R. Civ. P. 26(e).

experts but instead the June 21, 2013 report "consists almost entirely of surprising new opinions regarding subjects that Plaintiffs have never previously disclosed, i.e., First American's alleged record-keeping and reporting obligations, principles of 'forensic accounting', and the 'adequacy' of its data from 'an accounting and/or financial analysis point of view.'" Brief at 1 (emphasis in original). Not surprisingly plaintiffs disagree. Plaintiffs argue that not only does Paktar rebut Strombom's opinions by stating that defendant's databases are sufficient for determining who was overcharged, but he also explains why this must be so.

Discussion

Federal Rule of Civil Procedure 26(a)(2) provides that a party must disclose to the other parties the identity of any witness it may use at trial. Fed. R. Civ. P. 26(a)(2)(A). A party who intends to offer expert testimony is required to disclose a written report for each expert witness, which includes "a complete statement of all opinions the witness will express and the basis and reasons for them." Rule 26(a)(2)(B)(i). A party is required to make these disclosures at the times and in the sequence that the court orders. Rule 26(a)(2)(D). If the court's scheduling order allows for rebuttal reports, a party may submit expert rebuttal testimony if

---

Pakter's self-styled designation that his report was a "supplement" is not controlling.

4

the evidence is "intended solely to contradict or rebut evidence on the same subject matter identified by another party." Rule 26(a)(2)(D)(ii); see also Crowley v. Chait, 322 F.Supp.2d 530, 550 (D.N.J 2004); In re Asbestos Prod. Liab. Litig. v. Fiberboard Corp., Nos. 09-74351x, 09-74410, 2012 WL 661673, at *3 (E.D. Pa. Feb. 8, 2012) (striking rebuttal report for "presenting few, if any, refuting arguments made by the opposing party"). A significant number of cases in the District addressing the permissible scope of expert rebuttal reports arise within the context of patent infringement litigation. See generally ABB Air Preheater, Inc. v. Regenerative Envtl. Equip. Co., Inc., 167 F.R.D. 668, 672 (D.N.J. 1996)(finding "[e]vidence of secondary considerations is in the nature of rebuttal evidence"); Shire, LLC v. Amneal Pharm., LLC, No. 11-3781, 2013 WL 1932927, at *9 (D.N.J. May 7, 2013) (striking rebuttal expert's disclosure contained in defendant's responsive *Markman* brief for failing to "provide [] scientific disagreement with the offered [claim] construction"); Reckitt Benckiser, Inc. v. Tris Pharma, Inc., No. 09-3125, 2011 WL 6722707, at *3 (D.N.J. Dec. 21, 2011) (affirming magistrate judge's decision to strike supplemental report containing "substantial new data and information" exceeding scope of expert's original report). However, the same principles apply to this case.

While rebuttal and reply reports "may cite new evidence and data so long as the new evidence and data is offered to directly

contradict or rebut the opposing party's expert . . . expert reports that simply address the same general subject matter as a previously-submitted report, but do not directly contradict or rebut the actual contents of that prior report, do not qualify as proper rebuttal." Withrow v. Spears, No. 12-06, 2013 WL 4510305, at *12 (D. Del. Aug. 22, 2013) (citation omitted); see also Blake v. Securitas Sec. Servs., No. 12-1349, 2013 WL 1814895, at *2-3 (D.D.C. May 1, 2013) (prohibiting expert rebuttal testimony exceeding scope of critique made by opposing party's expert).

    Rebuttal cannot be used to correct a party's oversights in its case-in-chief. See Crowley, 322 F.Supp.2d at 551. An expert's rebuttal report should be stricken if it contains new opinions or information which contradicts the expert's initial report, but need not be stricken if it contains merely "an elaboration of and [is] consistent with an opinion/issue previously addressed" in the expert's initial report. Pritchard v. Dow Agro Scis., 263 F.R.D. 277, 284-85 (W.D. Pa. 2009). The Third Circuit has noted that there is no "bright line rule" whereby every expert opinion "must be included in a preliminary report, or forever be precluded." Hill v. Reederei F. Laeisz G.M.B.H., Rostock, 435 F.3d 404, 423 (3d Cir. 2006) (finding no error in lower court's admission of expert rebuttal testimony exceeding scope of expert's original report). While the applicable case law prohibits an expert from using rebuttal as a "do-over" of an original report, courts have

6

refrained from "automatically exclud[ing] anything an expert could have included in his or her original report." Crowley, 322 F.Supp.2d at 551; see also, Reichold, Inc. v. U.S. Metals Ref. Co., No. 03-453, 2007 WL 1428559, at *13 (D.N.J. May 10, 2007) (reversing magistrate judge's ruling denying plaintiff's use of supplemental report, explaining that the report "address[ed] an important issue on which [expert] did not have the data to opine at the time of his original report.").

    An instructive case is Crowley, supra. In Crowley, the defendants moved to strike a transcript attached to the plaintiff's expert's rebuttal report. The transcript was submitted in response to the defendants' expert's report criticizing the methodology used by the plaintiff's expert in her original analysis. The defendants argued that by failing to cite to the attached transcript as the basis for the standards used in preparing her original report, the plaintiff's expert should be barred from subsequently introducing the transcript in a rebuttal report. Id. at 551. In its denial of the defendants' motion, the court found the defendants' interpretation of what is permissible on rebuttal to be "substantially more narrow than the Third Circuit's," explaining that rebuttal evidence need only "repel" the other expert's testimony. Id. The court warned that a rule automatically excluding rebuttal reports containing information that could have been included in an expert's original report "would lead to the

7

inclusion of vast amounts of arguably irrelevant material in an expert's report on the off chance that failing to include any information in anticipation of a particular criticism would forever bar the expert from later introducing relevant material." Id.

Paktar's March 1, 2013 report concluded, inter alia, that plaintiffs and thousands of other customers reflected in defendant's databases were overcharged. March 1, 2013 Report at 27-28. He also concluded, "[i]t is feasible to construct a Master Database to calculate overcharges for the entire populations of referenced transactions." Id. at 28. Strombom directly attacked these conclusions in his May 1, 2013 report and concluded, inter alia: (1) the data stored in defendant's databases "are not adequate to determine whether there was an overcharge in a refinance transaction in New Jersey during the proposed class period" (Report at 3); (2) "it would not be feasible to construct a master database to calculate overcharges for the entire population of refinanced transactions" (id.); (3) Paktar's analysis of transactions from defendant's databases are unreliable (id. at 4); (5) plaintiffs' "sampling and extrapolation are of no value in identifying members of the proposed class" (id.); and (6) Paktar's "conclusions are unreliable because they are derived from [his] flawed analysis of the sampled FAST transactions" (id.).

The Court finds that Paktar's June 21, 2013 report is a proper rebuttal and, therefore, will deny defendant's motion. Strombom's

8

report is a direct attack on the accuracy, reliability and completeness of defendant's databases that Paktar relied upon. As Strombom clearly set forth in his report, defendant argues its databases cannot be used to reliably identify the defined class members and who was overcharged. This opinion buttresses defendant's argument that class certification should be denied because the subject refinancing files must be individually reviewed to determine if there was an overcharge. Strombom unequivocally opines that defendant's databases are unfit for class certification purposes. Paktar's June 21, 2013 report serves to "repel" these opinions and explains why he believes defendant is wrong. See Crowley, 322 F.Supp.2d at 551.

At the outset of his report Paktar plainly indicates that he intended to address and rebut Strombom's opinions. Paktar wrote:

> This Supplemental Expert Report on Overcharges of Title Insurance Premiums responds to certain of Strombom's criticisms. This Supplemental Expert Report includes my rebuttal of Strombom's positions, the bases for my opinions and lists the additional information and/or documentation reviewed and/or relied on in making my calculations and/or in forming my opinions.

June 21, 2013 Report ("RR") at 1. One good example of the rebuttal nature of Paktar's report is the fact that Paktar "rechecked" his analysis based on Strombom's comments. Paktar concluded that his analysis of the WINGS and STARS databases was "unchanged." Id. at 19. Another good example of the rebuttal nature of Paktar's report is his direct attack on Strombom's contention that defendant's

9

databases are unreliable, inadequate and incomplete for class certification purposes. Paktar explains why the databases are or should be reliable and, therefore, why Strombom is wrong and he is right. Although defendant is convinced that its databases are inadequate for class certification purposes, plaintiffs do not have to accept its arguments. Referring in part to potentially applicable corporate governance, accounting, and financial analysis standards, Paktar concludes:

> Strombom's assertion that electronic data stored in First American's databases is not adequate to determine whether there was an overcharge in a refinance transaction is without basis, provided First American so assembles, analyzes and evaluates such data.

Id. at 15. This is squarely a rebuttal of Strombom's conclusion that defendant's databases are unreliable. So too is Paktar's conclusion that his calculations based on defendant's databases are "reliable." RR at 10. Defendant ignores the context of the alleged "surprising" new opinions. The opinions were not pulled out of whole cloth but were instead given to directly contradict defendant's argument that its own databases are unreliable. Defendant is wrong when it argues that Paktar did not respond to an argument it raised. Brief at 12. Paktar addresses Strombom's primary contention that defendant's databases cannot be used to calculate title insurance premiums correctly and that there is no feasible means to identify the class other than to individually review defendant's property files or the files of its agents.

Defendant complains that Paktar discussed "surprising" new issues in his June 21, 2013 report, i.e., defendant's record-keeping obligations, forensic accounting issues, and the adequacy of defendant's data from an accounting and/or financial point of view. Brief at 1. Paktar's conclusions are consistent with his initial report. The crux of defendant's argument is that since "Dr. Strombom did not opine on forensic accounting, financial reporting, or record-keeping ... Paktar ... was foreclosed from opining on those subjects for the first time in his 'rebuttal' report." Reply Brief ("RB") at 6. Defendant is wrong. See Crowley, 322 F.Supp.2d at 551. Defendant ignores the fact that Paktar raised these issues in direct rebuttal to Strombom's conclusions. Defendant acknowledges, "Dr. Strombom's opinions address whether the information contained in First American's data systems is 'adequate' for plaintiffs' litigation purposes, i.e., identifying class members, establishing liability and measuring damages." RB at 3 (emphasis in original). This is precisely what Paktar addresses and rebuts. Paktar's rebuttal is not strictly limited to only the specific items that Strombom raised. As he has done, Paktar may rely upon new evidence and opinions to rebut Strombom's opinions. See Hurd v. Yaeger, No. 06-1927, 2009 WL 2516934, at *4 (M.D. Pa. Aug., 13, 2009) (refusing to strike rebuttal reports that failed to reference the expert reports they were rebutting). Paktar is not tied down to only the specific opinions he raised in his initial

11

report when his new opinions directly rebut Strombom's opinions. Strombom opines that defendant's databases are inaccurate and incomplete. Paktar has the right to explain why he believes Strombom is wrong. Plaintiffs explained that they did not previously raise the questioned opinions because they did not anticipate defendant's argument. Plaintiffs' Response ("Pls.' Resp.") at 10. ("Paktar was not required to anticipate in his initial expert report Defendant's audacious argument that its own records-- ... -- are not reliable."). In any event, the Third Circuit does not automatically bar anything an expert could have included in his original report. See Crowley, 322 F.Supp.2d at 551; Hill, 435 F.3d 404, 423 (3d Cir. 2006).

Defendant argues that Paktar's report is "untimely, unjustified and prejudicial." Brief at 7. The Court has already explained why Paktar's report is not "untimely" or "unjustified." Defendant is not prejudiced because, in its own words, the opinions defendant complains about were "barely cited" by plaintiffs in their reply brief. See RB at 13.[5] Further, defendant addressed Paktar's report in its August 1, 2013 sur-reply to plaintiffs' class certification motion [Doc. No. 162], and its August 28, 2013

---

[5] As discussed, the Court disagrees with defendant's assertion that, "[w]ithin the Third Circuit and other courts, if a purported 'rebuttal' expert report offers new opinions that could have been included in the expert's prior disclosures, those opinions are untimely and should be stricken." RB at 2.

12

letter brief. See Doc. No. 167.[6]

To a large extent defendant's arguments go to the underlying merits of Paktar's opinions rather than whether they constitute proper rebuttal. For example, defendant argues Paktar provides "broad abstractions and generalizations." RB at 2-3. It also argues that Paktar does not address "data fields or the actual functionality of the systems." Id. at 2. Defendant also argues the alleged new facts Paktar raises are "wholly irrelevant." RB at 5-6. These objections go to the merits of Paktar's opinions, an issue not before this Court.  This Court is only addressing whether Paktar's report should be stricken because it is not a proper rebuttal.

In support of its argument that proper rebuttal testimony "must be confined to responding to criticisms identified by the expert," defendant cites to Bowman v. Int'l Bus. Mach. Corp., No. 11-0593, 2013 WL 1857192, at *1, *8 (S.D. Ind. May 2, 2013), a class action case in which the plaintiffs served the defendants

---

[6] Tellingly, defendant's sur-reply did not seek to strike Paktar's report or ask for leave to serve a new report. Nor did defendant ask for more discovery after the June 21, 2013 report was served. Since Paktar's report was served on June 21, 2013, and defendant filed its sur-reply on August 1, 2013, defendant surely had a sufficient opportunity to address Paktar's "surprising new opinions." For these reasons, the Court is skeptical of defendant's argument that "[t]o full and fairly respond to Mr. Pakter's new opinions, First American would need to identify and designate new experts on the new accounting and regulatory topics and possibly re-depose Mr. Pakter." Brief at 14.

13

with two expert reports discussing the viability of using "electronic databases" to identify potential class members and to quantify economic damages resulting from the termination of Medicaid benefits. Id. at *1. After the defendants served its expert reports highlighting flaws in the plaintiff's expert's analysis and methodology, the plaintiff's belatedly served the defendants with its expert's "reply reports" over a month after class expert discovery had closed. Id. The "reply reports" responded to the defendant's expert's reports by introducing an entirely new methodology for identifying class members, discussing the use of a software program never before mentioned in earlier reports, and revealing a new measure of damages. Id. at 6. In affirming the magistrate judge's decision to strike the reply reports as improper rebuttal, the district court found that the reports "contained new analyses and arguments," noting that "[a] rebuttal report is not the time to change methodologies to account for noted deficiencies; instead it is to respond to criticisms of methodologies." Id. at 7.

While defendant accuses Pakter of introducing surprising "new opinions" regarding defendant's record-keeping practices and characterizes Pakter's June 21, 2013 report as "improper bolstering" rather than proper rebuttal, the Court finds that Pakter's report is a direct response to Strombom's criticisms regarding the reliability of the results of Pakter's analyses from

14

the FAST, WINGS, and STARS databases. Unlike Bowman, where the plaintiff's experts attempted to introduce substantive changes to their methodology and calculations under the guise of "reply reports," Pakter's June 21, 2013 report highlights defendant's record-keeping principles as a means of rebutting Strombom's assertion that defendant's databases are inadequate to determine whether an overcharge took place. RR at 19. Therefore, plaintiffs' reliance on Bowman is unpersuasive.

In lieu of striking Paktar's report, defendant asks for leave to re-depose Paktar and to submit a "Supplemental Report." Defendant's request is denied. Defendant already deposed Paktar on April 19, 2013. Defendant could have waited to depose Paktar until after his rebuttal report but defendant chose to depose him earlier. Given that Paktar submitted a proper rebuttal report, defendant cannot establish good cause to depose Paktar two times. See Rule 30(a)(2)(A)(ii). Also, since plaintiffs served a proper rebuttal report, defendant's request for leave to serve a "supplement" is denied. Otherwise, parties would continually ask for leave to serve more and more supplemental expert reports.[7]

---

[7] The Court also denies defendant's request for additional discovery pursuant to the discretion it is afforded under Fed. R. Civ. P. 26(b)(2)(C)(iii). The minimal value of Paktar's second deposition and a possible new expert is substantially outweighed by the burden, expense, and delay that discovery will cause. As noted, Paktar's rebuttal is not a focus of plaintiff's request for class certification and defendant has already responded to the rebuttal in its briefs. A new round of expert

Conclusion

    Accordingly, for all the foregoing reasons,

    IT IS HEREBY ORDERED this 26th day of September, 2013, that defendant's "Motion to Strike Plaintiffs' Supplemental Expert Report" is DENIED; and

    IT IS FURTHER ORDERED, that defendant's request to re-depose Paktar and to submit "its own expert testimony on the subjects placed at issue for the first time in Mr. Paktar's "Supplemental" Report," (Brief at 18) is DENIED.

                                            s/Joel Schneider
                                            Joel Schneider
                                            United States Magistrate Judge

---

reports and depositions is of minimal value and will further delay the class certification decision.