NOT FOR PUBLICATION                    [Docket Nos. 207, 208 & 217]

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

| | |
|---|---|
| MIRIAM HASKINS, et al., | |
|     Plaintiffs, | Civil No. 10-5044 (RMB/JS) |
|       v. | **OPINION** |
| FIRST AMERICAN TITLE INSURANCE CO., | |
|     Defendant. | |

APPEARANCES:

Daniel Posternock
McDowell Riga Posternock, PC
400 N. Church Street
Moorestown, NJ 08057
    Attorneys for Plaintiffs

Edward J. Reich
Dentons US LLP
1221 Avenue of the Americas
New York, NY 10020
    Attorneys for Defendant

**BUMB**, UNITED STATES DISTRICT JUDGE:

    I. Background[1]

    This matter comes before the Court upon Plaintiffs' Motion

---

[1] As the Court writes only for the parties, it recites only those facts and portions of the prior Opinion necessary for the instant motion.  For a complete overview of the facts underlying this litigation see, Haskins v. First American Title Ins. Co., No. 10-5044, 2014 U.S. Dist. LEXIS 9559 (D.N.J. Jan. 27, 2014).

1

for Reconsideration [Docket No. 207][2], requesting that this Court reconsider its denial of Plaintiffs' Motion for Class Certification.  Simply put, Plaintiffs' Motion for Reconsideration is a reiteration of the same superficial arguments asserted in their Motion for Class Certification that are belied by the evidence presented in this case, including the Plaintiffs' own expert's testimony.

Plaintiffs are New Jersey homeowners who refinanced their home mortgages and allege in their Amended Class Action Complaint (the "Amended Complaint") that Defendant First American Title Insurance Company ("Defendant" or "FA") systematically overcharged New Jersey homeowners for title insurance during refinance transactions.[3] (Amended Comp. at ¶ 1).

---

[2]  The parties have submitted Motions to Seal [Docket Nos. 208 and 217] in conjunction with the Motion for Reconsideration. For reasons nearly identical to those articulated in this Court's prior Order [Docket No. 181] those motions are GRANTED.

[3] Plaintiffs in this matter proposed the following class definition:
> All homeowners in New Jersey who, during the period September 29, 2004 through the date of judgment (the "Class Period"):
> (1)  refinanced a home mortgage on the same property already covered by a mortgage;
> (2)  paid a lenders' title insurance premium to First American Title Insurance Company, directly or indirectly; and
> (3)  either:
>
> (A)  Paid a premium that exceeded the Minimum Possible Premium by at least $25, in a refinancing transaction for which First American's electronic records do NOT show that the premium charged was

Plaintiffs claim that Defendant was bound by statutory title insurance rates, but overstated those fees on the HUD-1 Settlement Statements at closing. (Id. at ¶ 42).

In New Jersey, title insurance rates are regulated by law, and Defendant is a member of the New Jersey Land Title Insurance Rating Bureau and subject to its filed Manual of Rates and Charges ("Rate Manual").  (Aubrey Cert. at ¶ 3).  The Rate Manual provides for a discount (the "Discounted Rate") on title insurance for a refinance transaction when:

- The transaction is a refinance (i.e., existing loan(s) are paid off with funds from the new loan and are released at closing);
- The new loan is made to the same borrower; and
- The loan is made on the same property.

---

the mandated amount under the New Jersey Manual of Rates and Charges (the "Rate Manual"). The Minimum Possible Premium is the premium that would have been charged if the Refinance Rate were applied to the entire loan amount for purposes of calculating the premium[;]

OR

(B)  Paid a premium that exceeded the Minimum Possible Premium by at least $250;

OR

(C)  Purchased title insurance from First American or a subsidiary of First American, as opposed to a nonemployee or independent title agent, and paid a premium that exceeded the Minimum Possible Premium by at least $25.

(Pls.' Class Cert. Br. at 3-4).

3

(<u>Id</u>. at ¶ 4 & Exs. A & B (Rate Manual §4.6.1)).[4]  It is

undisputed that a transaction must meet the above criteria in

order to qualify for the Discounted Rate.  It is similarly

undisputed that, once you know whether a transaction qualifies

for the Discounted Rate based on the above criteria, to

calculate an overcharge, if any, requires four data elements:

- Liability Amount
- Liability Date
- Premium Charged; and
- Prior Loan Amount.[5]

     During the proposed class period, FA sold title insurance

through two different avenues: directly from its branch offices

in New Jersey and indirectly through authorized title agents.

(Aubrey Cert. ¶ 8).  FA maintains three different IT databases

to store data related to title insurance policies issued in New

Jersey: "FAST", "WINGS" and "STARS".  Information regarding

---

[4] In addition, the Discounted Rate applies only to "so much of
the new policy as represents the face amount of the mortgage or
mortgages . . . being refinanced," and then the Basic or
Standard Rate applies to any amount over the amount of previous
indebtedness.  (<u>Id</u>.).  In other words, the Discounted Rate would
only apply to "old money" and amounts above the previous amount
of the prior mortgage would be considered "new money," charged
at the higher rate.  (Jan. 9, 2014, Hearing Tr. 117:10-18).
Finally, the refinance rate will not apply where the prior
mortgage loan was a construction loan or if an existing mortgage
is not both paid off <u>and</u> released at closing.  (Aubrey Cert. at
¶ 5).

[5] <u>See</u> Plaintiffs' Expert Report of Mr. Pakter at p. 9.

policies sold directly by FA is stored in its "FAST" IT system. The information stored in FAST, however, does not lend itself to an electronic determination of whether a transaction qualified as a refinance, even if the transaction type listed in the system is "refinance." (Barney Cert. ¶ 9; Barney Dep. 91:4-20)[6].

The electronic information related to title insurance transactions completed by FA's independent title agents is stored in WINGS (for policies issued prior to 2008) and STARS (for policies issued from 2008 forward).  (Barney Cert. ¶ 10). The information that is input into the WINGS and STARS systems about the policy transactions depends entirely on what is

---

[6] During the 30(b)(6) deposition of Karen Barney, First American's Technology Product Manager, she testified that merely because a transaction was listed in the system as a refinance did not mean that it was in fact a refinance transaction or that the refinance rate applied:

Q: This is a refinancing transaction; correct?

A: I would not say that -- for a fact.

Q: It's noted as a –

A: The transaction type selected in this order is a refinance.  That does not mean that it was a refinance transaction.

Q: And it wasn't a refinancing – actually, it wasn't a refinancing transaction, it would just be a mistake that that it was designated as such in this particular document?

***

A: Well, we just pull whatever is in the – in that field so.  So either it was actually a refinance or not, you wouldn't know without reviewing the file.

(Barney Dep. 91:4-13, 16-19, emphasis added).

remitted by the agent and can vary from agent to agent. (Barney Dep: 22:18-23:9; Dirks Dep. 37:1-13; Whippen Dep. 20:7-23).

As stated in this Court's prior Opinion, and despite Plaintiffs' blanket contentions to the contrary, the evidence and the expert testimony demonstrates that merely because a transaction was listed in the IT systems as a refinance did not mean that it was, in fact, a refinance transaction or that the Discounted Rate applied. Instead, a review of each individual file is needed to determine if the policy qualified for the Discounted Rate. See e.g., Barney Dep. 91:4-13, 16-19; Barney Decl. at ¶¶ 6 & 13.

While the information input into all three IT systems varies, the FAST, WINGS and STARS systems have rate calculators that "calculate premiums." (See Whippen Dep. 40:9-15 (WINGS); Dirks Dep. 43:8-14 (STARS) & Barney Dep. 62:7-22 (FAST)). Based on these calculations, FA engages in a process to perform reconciliations on its agents' remittances to resolve variances between the amounts charged and the amounts remitted by the independent agents. (Dirks Dep. 14:5-20).

As set forth in this Court's prior Opinion, and as now expressly admitted by Plaintiffs, these rate calculators, however, are not designed to determine whether the requirements

6

for the Discounted Rate per the Rate Manual were met[7] or whether such rate was properly applied.   Instead, the independent agents determine whether the requirements for the Discounted Rate were satisfied. (Aubrey Decl. at ¶ 9; see e.g., Berenato Decl. ¶ 17; Fitzpatrick Decl. ¶ 21; Gdovin Decl. ¶ 7; Greist Decl. ¶ 7).   To ensure compliance of its agents with the Rate Manual, FA conducts only random audits – not exhaustive audits - of agent files, which involve manual reviews of the underlying agent files to "determine what type of transaction it was, was it a purchase or refinance, [and to] determine what rate structure was used."  (Bouffard Dep. 14:4-20; Foma Dep. 14:13-17).

The central dispute in this case, and revisited on this Motion for Reconsideration, centers on whether the data in the Defendant's relevant databases – i.e., FAST, WINGS and STARS – contains, "in electronic form, all of the necessary information needed to calculate and verify premiums in accordance with the New Jersey Rate Manual." (Pls.' Class Cert. Reply Br. at 1)(emphasis added).  This Court previously found that the relevant databases did not contain the information needed under the proposed class definition and that a file-by-file review was

---

[7] In response to this finding, the Plaintiffs in their Reconsideration Reply brief state: "This is indeed true." [Docket No. 224 at 2].

necessary to determine whether a transaction qualified for the Discounted Rate and was overcharged.

Pursuant to the above, this Court denied Plaintiffs' Class Certification Motion, finding that Plaintiffs had failed to demonstrate that the putative class met the requisite ascertainability, commonality and predominance requirements necessary for class certification pursuant to Federal Rule of Civil Procedure 23(a),(b)(3).  In doing so, this Court found that the Plaintiffs had not properly demonstrated that the proposed class is "readily ascertainable based on objective criteria."  Agostino v. Quest Diagnostics Inc., 256 F.R.D. 437, 478 (D.N.J. 2009).  The evidence before this Court demonstrated that Plaintiff's proposed method of ascertaining the members of the proposed class was unsuccessful.  Carrera v. Bayer Corp., 727 F. 3d 300, 306 (3d Cir. 2013)("A Plaintiff may not merely propose a method of ascertaining a class without evidentiary support that the method will be successful.").

In addition, this Court found that the necessary file-by-file review undercuts "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation."  Wal-Mart Stores v. Dukes, 131 S. Ct. 2541, 2551 (2011).  As such, this Court found that Plaintiffs did not satisfy Rule 23(b)(3)'s requirements -- namely, whether "the element of [their legal claims are] capable of proof at trial

through evidence that is common to the class rather than
individual to its members." Hydrogen Peroxide, 522 F.3d at 311-
12.

This Court's finding is in line with other courts across
the country reviewing similar claims against FA.  See e.g.,
Slapikas v. First American Title Ins. Co., No. 06-0084, 2014
U.S. Dist. LEXIS 83323, at *15 (W.D. Pa. June 19, 2014)(denying
motion for reconsideration and holding that "[b]ecause a jury
will need to inquire into each transaction, a 'one stroke'
resolution is impossible to achieve, making certification of a
class improper in this case."); Loef v. First American Title
Ins. Co., No. 08-311, 2012 U.S. Dist. LEXIS 174313, at *17 (D.
Me. Dec. 10, 2012)("Because liability would require an
assessment of each transaction to determine if the absent class
member qualified for the discount rate, it could not be
established in one stroke.")(internal quotations omitted);
Boucher v. First American Title Ins. Co., No. 10-199, 2012 U.S.
Dist. LEXIS 102904, at *12-18 (W.D. Wash., July, 24
2012)(finding that "proving or disproving each class member's
claim depends on a file-by-file review of all class members'
transactions" and that such an inquiry is "incompatible with a
class action"); Scott v. First American Title Ins. Co., 276
F.R.D. 471, 480 (E.D. Ky. 2011)(holding that "[c]ertifying a
(b)(3) class for those who paid a premium that 'exceeded' filed

rates necessitates an intensive fact-finding mission into the circumstances of each borrowers' refinancing transaction," and that the predominance requirement of Rule 23 was not met).


II.  Standard of Review:

In the District of New Jersey, Local Civil Rule 7.1(i) governs motions for reconsideration.  Bowers v. Nat'l. Collegiate Athletics Ass'n., 130 F.Supp.2d 610, 612 (D.N.J. 2001).  Local Rule 7.1(i) creates a procedure by which a court may reconsider its decision upon a showing that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision."  Agostino v. Quest Diagnostics Inc., No. 04-4362, 2010 WL 5392688, at *5 (D.N.J. Dec. 22, 2010) (citing Bryan v. Shah, 351 F. Supp. 2d 295, 297 (D.N.J. 2005); Bowers, 130 F. Supp. 2d at 612).

The "purpose of a motion for reconsideration is to correct manifest errors of law or fact or to present newly discovered evidence."  Harsco Corp. v. Zlotnicki, 779 F.2d 906, 909 (3d Cir. 1985) (internal citation omitted).  Reconsideration is to be granted only sparingly.  United States v. Jones, 158 F.R.D. 309, 314 (D.N.J. 1994).  Such motions "may not be used to relitigate old matters, or to raise arguments or present evidence that could have been raised prior to the entry of judgment."  NL Indus., Inc. v. Commercial Union Ins. Co., 935 F.

10

Supp. 513, 515-16 (D.N.J. 1996) (internal citation omitted).
Third Circuit jurisprudence dictates that a Rule 7.1(i) motion
may be granted only if: (1) there has been an intervening change
in the controlling law; (2) evidence not available when the
Court issued the subject order has become available; or (3) it
is necessary to correct a clear error of law or fact to prevent
manifest injustice.  Max's Seafood Café v. Quinteros, 176 F.3d
669, 677 (3d Cir. 1999) (citing North River Ins. Co. v. CIGNA
Reinsurance Co., 52 F.3d 1194, 1218 (3d Cir. 1995)); Agostino,
2010 WL 5392688, at *5.

Again, Rule 7.1 is clear that the Court need not look to
matters which were not originally presented, only those that may
have been "overlooked."  See Florham Park Chevron, Inc. v.
Chevron U.S.A., Inc., 680 F. Supp. 159, 162 (D.N.J. 1988).  As
such, "except in cases where there is a need to correct a clear
error or manifest injustice, '[o]nly dispositive factual matters
and controlling decisions of law which were presented to the
court but not considered on the original motion may be the
subject of a motion for reconsideration."  Pechiney, 2012 U.S.
Dist. LEXIS 114255, 2012 WL 3527721, at *3 (quoting Guinta v.
Accenture, LLP, No. 08-3776, 2009 U.S. Dist. LEXIS 4674, 2009 WL
301920, at *5 (D.N.J. Jan. 23, 2009)).

III. <u>Analysis</u>

As stated in this Court's prior Opinion, it is the Plaintiffs' burden to demonstrate that a class action is a proper vehicle for a lawsuit. <u>Hayes v. Wal-Mart Stores, Inc.</u>, 725 F.3d 349, 354 (3d Cir. 2013)(citing <u>Comcast Corp., v. Behrend</u>, 133 S. Ct. 1426 (2013)).  This Court previously found that Plaintiffs in the instant matter had failed to meet that burden.  In seeking reconsideration, Plaintiffs ask this Court to consider many of the arguments that it already considered, heard oral argument on, and rejected in its previous Opinion such as: Plaintiffs' argument that all the information needed to calculate a premium is available in the FAST system, including the prior loan amount; that the WINGS and STARS "premium" amounts listed do not contain charges other than the actual premium charged; and, that the refinance label indicates that a transaction qualified for the Discounted Rate.  Reiterating the same arguments is not the appropriate use of a motion for reconsideration.  Nevertheless, because Plaintiffs continue to distort the record, this Court will again address Plaintiffs' arguments.

In seeking reconsideration, Plaintiffs present the following arguments:

- FA's WINGS, FAST and STARS databases are "Business Records" as defined by Federal Rule of Evidence 803(6)[8] and, as such, contain all the necessary information to calculate the premium amount under the Rate Manual.  (Pls.' Reconsideration Br. At 4).

- Plaintiffs can rely on the "refinance" label in FA's IT Systems as conclusive proof that the transactions qualified for the Discounted Rate.  (<u>Id.</u> at 10).

- The evidence supports an alternative class definition newly offered by Plaintiffs. (<u>Id.</u> at 14).

- Supplemental authority in the form of court decisions decided after this Court's previous decision support class certification.  (<u>See</u> <u>e.g.</u>, Docket Nos. 242, 243 and 246).

The Court will address each of these arguments in turn.


A) <u>FA's WINGS FAST and STARS databases as "Business Records"</u>

The crux of Plaintiffs' argument that FA's FAST, WINGS and

STARS "qualify as business records and are admissible and

---

[8] Rule 803(6) states, in relevant part: The following are not excluded by the rule against hearsay, regardless of whether the declarant is available as a witness: (6) *Records of a Regularly Conducted Activity*. A record of an act, event, condition, opinion, or diagnosis if:
      (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;
      (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
      (C) making the record was a regular practice of that activity;
      (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
      (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

reliable under FRE 803(6)," (Pls.' Reconsid. Br. at 2), is that these databases "contain[] all the necessary information to compute the premium." (Id. at 2).  As a "business record" of that premium, Plaintiffs contend that those databases alone suffice in "determining which class members have been overcharged and by how much[.]" (Id. at 3).  In support of this argument, Plaintiffs reiterate the arguments presented to this Court in conjunction with their original motion for class certification and, again, <u>misconstrue the import of the premium calculators in FA's IT systems</u>.  Again, "the rate calculators do <u>not</u> determine whether a transaction qualifies for the refinance rate and/or whether the agent properly calculated the premium based on that rate.  Instead, the purpose of the rate calculators was to determine whether the information entered into the system matches what is provided by the agents (i.e., their cut of the premium versus FA's)." [Docket No. 194 at 26 (emphasis added)].

Relying on arguments and deposition testimony already considered by this Court, Plaintiffs again assert that FAST, contains all the data points needed to calculate the premium <u>despite testimony of their own expert to the contrary</u>.  <u>See</u> <u>e.g.</u>, Mr. Pakter, Jan. 9, 2014, Hearing Tr. 63:13-16 ("Q: And there is no data in FAST in the spreadsheet that you analyzed that shows a prior loan amount.  That's what you testified to,

right? A: Correct."). In addition, Plaintiffs argue that WINGS and STARS contain all the information needed to calculate the premiums. Again, such arguments were considered and rejected previously by this Court because they were just <u>not</u> supported by the evidence. <u>See</u> Docket No. 194 at p. 9 (finding that the testimony supported the conclusion that the "premium" amounts listed in STARS and WINGS often contain other charges).

Notably, this Court never ruled that FA's IT systems were either hearsay, inadmissible or unreliable per se. By pointing to the IT systems as admissible business records and party admissions, Plaintiffs beg the fundamental question: business records and/or party admissions of what? The evidence presented in this case reveals that these business records/admissions are not records or admissions of facts critical to class certification – <u>i.e.</u>, whether a transaction qualified for the Discounted Rate in the first instance and the existence of the four data points needed to calculate an overcharge, if any. Plaintiffs have presented no evidence or arguments overlooked by this Court that demonstrate that the databases suffice to successfully ascertain class members, <u>see</u> <u>Carrera v. Bayer Corp.</u>, 727 F. 3d at 306, or show how the putative class members' legal claims meet the commonality and predominance requirements rendering them "capable of proof at trial through evidence that

is common to the class rather than individual to its members."
Hydrogen Peroxide, 522 F.3d at 311-12.


   B) Plaintiffs can rely on the "refinance" label alone

   Plaintiffs' most superficially appealing argument is that they
are entitled to rely on the "refinance" label in the IT systems
as conclusive proof that the transactions met all of the
criteria discussed above to qualify for the Discounted Rate.
Plaintiffs contend that "[i]f FA can rely on the databases and
the information they contain . . . so can Plaintiffs."  This
statement, again, misses the point.  The evidence demonstrates
that the refinance label is not dispositive of whether the
transaction actually qualified for the Discounted Rate.  See
e.g., supra at p. 5 n.6; testimony of Mr. Pakter, Jan. 9, 2014,
Hearing Tr. 67:20-21 ("the database [meaning FAST] is silent on
those attributes of what constitutes a refinance").  Moreover,
FA did not rely on that label for the purpose of determining
which transactions qualified for the Discounted Rate and whether
that rate was properly applied in calculating the premium.
Instead, as discussed in this Court's prior Opinion, FA checked
remittances from agents to ensure the proper split only and
relied on its random audit process of agent files to determine
whether the proper rate was being applied to transactions that
qualified for the Discounted Rate.

16

> This audit process involves a <u>manual review of the</u>
> <u>underlying agent files to "determine what type of</u>
> <u>transaction it was, was it a purchase or refinance</u>, [and
> to] determine what rate structure was used." (Deposition
> of Edward Foma 14:13-17).

Docket No. 194 at 10 (emphasis added).

Again, the evidence presented in this case demonstrates
that the label used is not dispositive. This was made most
clear by Defendant's expert, Dr. Strombom, who demonstrated
that, when a review of the underlying files of "potential
overcharges" identified by Plaintiffs' expert from a sample in
the WINGS and STARS systems were actually reviewed, Plaintiffs'
expert was incorrect 94 percent of the time. (<u>See</u> Jan. 9, 2014,
Hearing Tr. 111:9-19)(86 percent of the sample had no overcharge
at all and in 8 percent the overcharge was less than Plaintiffs'
expert identified). Tellingly, Plaintiffs do not address these
findings in their Motion for Reconsideration. Plaintiffs do,
however, note that with respect to 40 potential overcharges
identified by their expert in the FAST system, Dr. Strombom only
found that 12 were not overcharges at all. Plaintiffs contend
that Dr. Strombom is incorrect as to 3 of these 12. Notably,
during the hearing on class certification, Plaintiffs' attempt
to question Dr. Strombom about these particular "errors" was
unsuccessful as it was not possible for either the Court or the
expert to tell from the information provided by Plaintiffs

17

whether the transactions under review were the same.   (See Hearing Tr. 177: 3-7).[9]

Finally, Plaintiffs are fundamentally incorrect when they argue that "the existence of database fields setting forth calculated premium is all that Plaintiffs must show at this stage." (Pls.' Reconsid. Reply at 6).  This argument fails to appreciate the burden Plaintiffs must carry at the class certification stage: to actually demonstrate via evidence that the method of ascertaining class members will be successful. See Carrera, 727 F. 3d at 306, 311 ("A Plaintiff may not merely propose a method of ascertaining a class without evidentiary support that the method will be successful[,] [and] assurances that a party 'intends or plans to meet the requirements' are insufficient to satisfy Rule 23.").[10]

---

[9]     The Court: you'd have to establish that with the witness, if they are the same files.

    Plaintiffs' Counsel: Can you tell whether this is the same transaction?

    Dr. Strombom: I cannot.

[10] That is not to say that Plaintiffs must identify the actual names of class members. See Carrera, 727 F.3d at 308 n.2 ("Although some evidence used to satisfy ascertainability, such as corporate records, will actually identify class members at the certification stage, ascertainability only requires the plaintiff to show that class members can be identified."); see also, Carrera, 727 F.3d 300 (3d Cir. 2013), reh'g denied, No. 12-2621, slip. op. (J. Ambro, dissenting).  To the extent this Court previously referred to ability to identify "actual class members," this Court clarifies that it was referring to the Plaintiffs' burden to supply evidentiary support that their method of identifying class members would actually be

Plaintiffs' inability to meet this burden was bolstered by the testimony of their own expert at oral argument:

> Q: So in your original report you provided potential overcharges, not actual overcharges, at least with regard to those several queries you mentioned; is that correct?
> A. The queries are all potential overcharges.
> Q. Why?
> A. Because I would need an additional process and/or data to determine if it was an actual overcharge.

(Jan. 9, 2014, Hearing Tr. 87:14-20).

Again, Plaintiffs have presented no arguments or evidence that this Court overlooked in their motion demonstrating that reconsideration is necessary to correct a clear error of law or fact to prevent manifest injustice.  Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999).  This Court, therefore, maintains its ruling that Plaintiffs proposed class

---

successful. [Docket No. 194 at 33]. This Court did not hold that Plaintiffs' class certification motion failed because they could not provide the identities of actual class members.  Instead, and as reiterated above, Plaintiffs proposed a method of ascertaining the class without evidentiary support that the method would be successful.  In addition, per the dictates of the commonality and predominance requirements of Rule 23(b)(3), the file-by-file review needed to determine whether an individual qualified for the Discounted Rate and was overcharged demonstrates that the critical element of the proposed class' legal claims is not "capable of proof at trial through evidence that is common to the class rather than individual to its members." In re Hydrogen Peroxide Antitrust Litigation, 552 F.3d 305, 311-12 (3d Cir. 2008).  Thus, class certification is inappropriate.

fails to meet the ascertainability, commonality and predominance requirements needed for certification under Rule 23.

C) Alternate Class Definition

In the alternative to the arguments already presented, Plaintiffs offer at this juncture a revised class definition including: "persons for whose mortgage refinancing transactions the WINGS, STARS, or FAST databases, on their face, show a calculated premium amount." (Pls.' Reconsid. Reply Br. at 14). For the reasons discussed at length above, this revised class definition suffers from the same infirmities as the original class definition: it fails to account for the issue of identifying whether the transactions at issue actually qualified for the Discounted Rate and fails to account for the problems discussed above with the calculated premium fields in the databases. As discussed, the refinance label in the databases has been shown not to be a sufficiently reliable indicator of whether the transaction qualified for the Discounted Rate.

D) Supplemental Authority

Finally, this Court has reviewed all of the parties' submissions of supplemental authority submitted after the briefing on the Motion for Reconsideration [see Docket Nos. 234-248], most of which contain case law that does not break new

ground in the area of class certification generally, or with respect to this case specifically.[11] See e.g., Docket No. 243, discussing the Kirk v. First American Title Co., No. BC 372797 (Sup. Ct. Ca. 2014)(accepting plaintiff's argument that the FAST database had enough information to calculate a class-wide damage award based on California law but noting that the defendant's argument that a loss must be proven as to each class member "has some support in the federal cases it cites.").[12]

   This Court notes that the supplemental submissions regarding the Third Circuit's denial of a rehearing en banc in

---

[11] In addition, Plaintiffs use the supplemental submissions to, yet again, raise the same vague spoliation accusation raised in their reconsideration reply brief.  [Docket No. 236]. This is not the appropriate manner to raise this allegation and Plaintiffs have not addressed any of the factors required to support a finding of spoliation. See e.g., Bull v. United Parcel Service, 665 F.3d 6, 73 (3d Cir. 2012)(finding that, in conjunction with other factors, a finding of bad faith is pivotal to a spoliation determination.).  In addition, Plaintiffs submit a new, and untimely, certification by their expert, Mr. Pakter, which breaks no new ground, as it relies on the assumption, discussed above, that the refinance label in the IT systems necessarily means the transaction qualified for the Discounted Rate. See e.g., Docket No. 242 at ¶ 9 ("I understand. . .that the rate category "NJRefiSubBasic", as reflected on First American's databases, indicates that the refinance rate is the applicable rate for the particular transaction).

[12] The Kirk decision is also distinguishable as it deals with fees related to escrow services provided by FA's wholly-owned subsidiary, First American Title Company.  Moreover with respect to FAST, the Kirk court held that one could identify "who ultimately paid the sub-escrow charge [thus], the Court [found] that it is sufficiently accurate to calculate restitution to the sub-escrow subclass." As discussed above, the databases at issue in this matter lack indicators of several factors needed.

Carrera, 727 F.3d 300 (3d Cir. 2013), reh'g denied, No. 12-2621, slip. op. (3d Cir. May 2, 2014), serve to bolster this Court's prior determination that class certification was inappropriate. In addition, this Court, addressing the concerns of the dissenting judges, notes that the decision to deny class certification relies on more than the issue of ascertainability and also rests heavily on the commonality and predominance problems the file-by-file review presents; Plaintiffs have failed to satisfy the requirement that their legal claims be "capable of proof at trial through evidence that is common to the class rather than individual to its members." Hydrogen Peroxide, 522 F.3d at 311-12.

Finally, with respect to Supreme Court's recent decision in Halliburton Co., v. Erica P. John Fund, Inc., 189 L. Ed. 2d 339 (2014), this Court finds that the Supreme Court's decision supports this Court's prior conclusion to the extent the Court reiterated that "plaintiffs wishing to proceed through a class action must actually prove—not simply plead—that their proposed class satisfies each requirement of Rule 23, including (if applicable) the predominance requirement of Rule 23(b)(3)." Id. at 355.  Otherwise, the Halliburton decision is grounded in the very specific circumstances of determining "whether securities fraud defendants may attempt to rebut the Basic [v. Levinson, 485 U.S. 224 (1998)] presumption at the class certification

stage with evidence of a lack of price impact [and] to

reconsider the presumption of reliance for securities fraud

claims . . . adopted in Basic."); such concerns are inapplicable

in the instant case.


IV.  Conclusion

      For the reasons set forth above, this Court will deny

Plaintiff's Motion for Reconsideration.  An appropriate Order

will issue this date.

                                    s/Renée Marie Bumb
                                    RENÉE MARIE BUMB
                                    United States District Judge

Dated:      July 30, 2014